UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Salon XL Color & Design Group, LLC,

      Plaintiff,

v.                                   Civil Case No. 20-11719

West Bend Mutual Insurance Company,        Honorable Sean F. Cox

      Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an insurance coverage dispute. Plaintiff Salon XL Color & Design Group, LLC ("Salon XL"), sued Defendant, West Bend Mutual Insurance Company ("West Bend"), for declaratory judgment, breach of contract, and violating the Michigan Uniform Trade Practices Act. (Am. Compl. ECF No. 13). The matter currently before the Court is West Bend's Motion for Summary Judgment, brought pursuant to FED. R. CIV. P. 56. (ECF No. 36). The parties have briefed the issues, and the Court concludes that oral argument is not necessary. Thus, the Court orders that the motion will be decided without a hearing. *See* E.D. Mich. LR 7.1(f).

As described in greater detail below, the Court shall GRANT West Bend's motion for summary judgment and DISMISS this action because Salon XL has not demonstrated that Governor Whitmer issued Executive Order 2020-20 due to an outbreak at Salon XL's premises, which is required for coverage under the Policy.

1

# BACKGROUND

Salon XL commenced this action on or about June 5, 2020, in the Circuit Court of Washtenaw, Michigan. (ECF No. 1 at 17-26). On June 26, 2020, West Bend removed the matter to this Court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1).

Salon XL filed an Amended Complaint on August 17, 2020. (ECF No. 13). As such, that pleading superseded and replaced the original complaint. The Amended Complaint includes one count seeking declaratory judgment (Count I), one count of breach of contract (Count II); and one count alleging that West Bend violated the Uniform Trade Practices Act (Count III). (ECF No. 13).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with FED. R. CIV. P. 56 (c) and (e), that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Defendants' motion includes a "Statement of Material Facts Not In Dispute" ("Def's

2

Stmt") (ECF No. 36-1) and Plaintiff's response brief includes a "Counter-Statement of Disputed Facts" ("Pl's Stmt") (ECF No. 41).

Salon XL operates a hair salon in Ann Arbor, Michigan. (Pl's Stmt, at PageID 1156). West Bend issued to Salon XL an insurance policy numbered A091584 05 for the policy period of November 11, 2019 to November 11, 2020 (the "Policy"). The Policy contains a coverage provision entitled Communicable Disease Business Income and Extra Expense (the "Communicable Disease coverage"). (Pl's Stmt, at PageID 1155).

As of March 2020, Salon XL's insured premises were located at 208 E. Washington St., Ann Arbor, Michigan. (Pl's Stmt at PageID 1156). Salon XL did not own or have exclusive control of the insured premises. (Pl's Stmt, at PageID 1156). Salon XL rented a chair at the insured premises from another hair salon business, Roya Beauty LLC ("Roya"). (Pl's Stmt, at PageID 1156).

Josh Little ("Little"), an owner of Roya, was traveling in Florida from March 12 to March 16, 2020. (Pl's Stmt, at PageID 1159). A few days later, he fell ill with what he believes was COVID-19. (Pl's Stmt, at PageID 1159).

On March 18, 2020, Salon XL had an appointment scheduled for Gail Baumgarten ("Baumgarten"). (Pl's Stmt, at PageID 1156). Prior to her appointment, Baumgarten texted the owner of Salon XL, Charlie Adams ("Adams"). (Pl's Stmt, at PageID 1157). Baumgarten told Adams that she had "a cough and a cold" and asked Adams if she should keep her appointment or reschedule. (Pl's Stmt, at PageID 1157). Adams told Baumgarten to come in for the appointment. (Pl's Stmt, at PageID 1157).

On March 19, 2020, Little sent a text message to Adams informing her that Roya would voluntarily shut down as a safety precaution. (Pl's Stmt, at PageID 1158). Roya's voluntary shutdown took effect on March 19, 2020 at 6:00 p.m. (Pl's Stmt, at PageID 1158). Salon XL was required to close effective March 19, 2020 at 6:00 p.m. because Roya had voluntarily closed. (Pl's Stmt, at PageID 1158).

Little could not say whether he contracted COVID-19 at Salon XL's premises or while traveling to and from Florida. (Pl's Stmt, at PageID 1159). Little's illness was not the reason that Roya and Salon XL were voluntarily closed. (Pl's Stmt, at PageID 1159).

At the time Salon XL was required to close as a result of Roya's voluntary closure, there was no government order requiring the shutdown or suspension of Salon XL's operation. (Pl's Stmt, at PageID 1159).

On March 21, 2020, at 4:14 p.m., the Governor of Michigan, Gretchen Whitmer, issued Executive Order No. 2020-20 ("Executive Order 2020-20"). (Pl's Stmt, at PageID 1162). Executive Order 2020-20 required that – beginning as soon as possible but no later than March 22, 2020 at 9 a.m. and continuing until April 13, 2020 at 11:59 p.m. – all "non-essential personal care services," including hair salons, be "closed to ingress egress, use, and occupancy by members of the public." (Pl's Stmt, at PageID 1162). The stated purpose of Executive Order 2020-20 was "[t]o mitigate the spread of COVID-19, protect public health, and provide essential protections to vulnerable Michiganders." (Pl's Stmt, at PageID 1162). Executive Order 2020-20 applied to all non-essential personal care service businesses in Michigan, including all hair salons in Michigan among other types of businesses. (Pl's Stmt, at PageID 1162).

Following the voluntary closure, Roya and Salon XL could not resume operations because of the restrictions imposed by Executive Order 2020-20 and subsequent executive orders. (Pl's Stmt, at PageID 1161).

Executive Order 2020-20 did not specifically mention Salon XL or Roya, and it did not specifically mention that anyone connected with Salon XL or Roya had tested positive for COVID-19. (Pl's Stmt, at PageID 1162). Executive Order 2020-20 did not specifically mention the presence of COVID-19 or any outbreaks of COVID-19 at Salon XL's premises, Roya's premises, or any other specific premises. (Pl's Stmt, at PageID 1163). Aside from Executive Order 2020-20 and subsequent extensions of it, there was no other government order requiring the shutdown or suspension of Roya's or Salon XL's operations. (Pl's Stmt, at PageID 1163).

Non-essential personal care services such as hair salons were allowed to reopen in Michigan as of June 15, 2020. (Pl's Stmt, at PageID 1163).

Salon XL submitted a claim to West Bend requesting coverage for its business interruption losses that occurred during the salon's closure required under the Executive Orders. (ECF No. 1, at PageID 91). On April 3, 2020, West Bend denied all of Salon XL's claims for coverage. (ECF No. 13, at PageID 342).

**STANDARD OF REVIEW**

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment carries the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

*Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

"[C]onstruction and interpretation of an insurance contract is a question of law . . . ." *Henderson v. State Farm Fire and Casualty Co.*, 460 Mich. 348, 353 (1999). In this case, the Court interprets the language of the insurance policy and its terms in accordance with Michigan's well-established principles of contract construction. *Id*. "An insurance contract must be enforced in accordance with its terms. We will not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111 (1999).

Michigan courts engage in a two-step process when determining coverage under an insurance policy: "(1) whether the general insuring agreements cover the loss and, if so, (2)

6

whether an exclusion negates coverage." *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377 (1997).

Ambiguities in an insurance contract are construed in favor of the insured. *Masters*, 460 Mich. at 111. However, the court will not create an ambiguity where the terms of the contract are clear. *Id*. "The fact that a policy does not define a relevant term does not render the policy ambiguous." *Henderson*, 460 Mich. at 354. The Court "will interpret the terms of an insurance contract in accordance with their commonly used meaning." *Masters*, 460 Mich. at 111. (quotations removed). Whether contract language is ambiguous is a question of law. *Henderson*, 460 Mich. at 353. Where there is no ambiguity, the Court will enforce the terms of the contract as written. *Masters*, 460 Mich. at 111.

Here, Salon XL argues that it is entitled to coverage under Communicable Disease section in the Policy. The Communicable Disease coverage section states:

> You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over your "operations." **The shutdown or suspension must be due to an outbreak of a "communicable disease"** or a "water borne pathogen" **at the insured premises** as described in the Declarations.
>
> We will pay any loss of Business Income or any necessary Extra Expense costs (other than the expense to repair or replace property) you incur arising from the shutdown or suspension of your "operations" . . .

(ECF No. 1, at PageID 53)(emphasis added).

The parties do not dispute that COVID-19 counts as a "communicable disease" under the Policy's definition. The parties also do not dispute that Executive Order 2020-20 constitutes a "shutdown or suspension."

The parties dispute revolves around whether Executive Order 2020-20 was "due to an outbreak . . . at the insured premises." (ECF No. 1, at PageID 53). West Bend takes the position that Executive Order 2020-20 was issued as a general plan to mitigate the spread of COVID-19 throughout Michigan and was not issued in response to anything that occurred at Salon XL's premises. (ECF No. 36, at PageID 1141). Whereas Salon XL argues that Executive Order 2020-20 specifically ordered all hair salons in Michigan to shut down, which included Salon XL. (ECF No. 40, at PageID 1358). The parties also disagree as to whether there was an "outbreak" at all on Salon XL's premises. (ECF No. 36, at PageID 1149; ECF No. 40, at PageID 1361).

First, the Court shall address the causation requirement with the phrase "due to" in the Policy. The Policy does not define the phrase "due to," so the Court shall interpret the term in accordance with its commonly used meaning. *Masters*, 460 Mich. at 111. The phrase "due to" means "as a result of: because of." *Due to*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/due%20to (last visited Mar. 16, 2022). Therefore, in order for the Communicable Disease coverage to apply, Governor Whitmer's issuance of Executive Order 2020-20 must be the result of an outbreak of COVID-19 at Salon XL's premises.

The stated purpose of Executive Order 2020-20 was "[t]o mitigate the spread of COVID-19, protect public health, and provide essential protections to vulnerable Michiganders." (Pl's Stmt, at PageID 1162). To achieve this purpose, Executive Order 2020-20 required all "non-essential personal care services," including hair salons, be "closed to ingress egress, use, and occupancy by members of the public." (Pl's Stmt, at PageID 1162). However, Executive Order 2020-20 did not specifically mention Salon XL or Roya, and it did not specifically mention that

8

anyone connected with Salon XL or Roya had tested positive for COVID-19. (Pl's Stmt, at PageID 1162).

Salon XL has not provided the Court with any authority that Governor Whitmer issued Executive Order 2020-20 in response to an outbreak *at* Salon XL's premises. Rather Salon XL argues that after the first documented cases of COVID-19 in Michigan, "it was clear that case levels would continue to rise . . . In that context, Executive Order 2020-20 was issued in response to an outbreak of COVID-19 in the state." (ECF No. 40, at PageID 1360). In essence, Salon XL argues that there was an outbreak of COVID-19 everywhere in the State of Michigan, and therefore, Executive Order 2020-20 was issued in response to an outbreak at Salon XL because Salon XL's premises were within the geographic boundaries of the state. (ECF No. 40, at PageID 1358-1360). However, this argument glosses over the Policy language that the outbreak specifically needs to be *at the insured premises*.

The Policy states that the insured premises are "described in the Declarations." (ECF No. 1, at PageID 53). Although the Declarations never explicitly define the insured premises, they do list the address as 208 E Washington St. Ann Arbor, MI 48104, which is Salon XL's address. (ECF No. 1, at PageID 29). This description supports the conclusion that the Communicable Disease coverage provision limits recovery to outbreaks that occur specifically at that address. Additionally, the plain and ordinary meaning of the term "premises" is "a tract of land with the buildings thereon." *Premise*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/premise (last visited Mar. 16, 2022). Therefore, the Court interprets the phrase "at the insured premises" to mean the building at which Salon XL's business operated and those buildings' grounds. *See West End Kids Academy, LLC v. West Bend Mut. Ins. Co.*, No. 5:20-

cv-00172, 2021 WL 4317724, at *3 (W.D. Ky Sept. 21, 2021) (analyzing a similar insurance policy and holding "the Court interprets the phrase 'at the insured premises' to mean the buildings at which [the insured's] business operated and those buildings' grounds.").

Again, Salon XL has not provided the Court with any authority that Governor Whitmer issued Executive Order 2020-20 *due to* an outbreak *at* Salon XL's premises. West Bend addresses the matter of causation succinctly in its brief: "If Salon XL did not exist, would Governor Whitmer still have issued Executive Order 2020-20?" (ECF No. 36, at PageID 1148). The Court agrees with West Bend that "[t]he answer here is undoubtedly yes. Thus, Executive Order 2020-20 was not issued 'due to' anything that occurred on Salon XL's premises." (ECF No. 36, at PageID 1148).

Furthermore, when the Communicable Disease coverage provision is read as a whole, it becomes evident that it covers losses arising from a communicable disease outbreak at the insured premises – not for an outbreak affecting the public at large. *Fed.-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*, 666 F.3d 384, 390 (6th Cir. 2011) ("Courts must look at the contract as a whole and give meaning to all terms") (quoting *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 434 (1992). The Communicable Disease coverage specifies covered extra expenses including "extra advertising costs to restore your business reputation" and the cost of "relocation expenses and costs to equip and operate the replacement of temporary locations" (ECF No. 1, at PageID 53). Neither of these actions are applicable to when a business is shut down due to an outbreak affecting the public at large. Salon XL's reputation was not damaged because all hair salons in the state were ordered to shut down, and there was no possibility of relocation within the state. *See Dakota Girls, LLC v. Philadelphia Indemnity Ins. Co.*, 524 F. Supp. 3d 762, 773-774 (S.D. Oh. 2021) (analyzing a similar insurance policy and reasoning that

"[t]hese provisions contemplate an outbreak of communicable disease on the insured's premises, not an outbreak affecting the public at large"), *aff'd*, 17 F. 4th 645 (6th Cir. 2021).

This is consistent with the Sixth Circuit's recent analysis in *Dakota Girls, LLC v. Philadelphia Indemnity Ins. Co.*, 17 F.4th 645, 651-652 (6th Cir. 2021). In *Dakota Girls*, the Sixth Circuit addressed whether private preschools were entitled to insurance coverage under a similar communicable-disease coverage provision after the State of Ohio shut down all facilities providing childcare services to combat the spread of COVID-19 in March 2020. *Id*. In reviewing the district court's opinion on the defendant's motion to dismiss, the Sixth Circuit held:

> Under this correct understanding of the policy – that the shutdown order had to be "due directly to an outbreak of a communicable disease . . . that causes an actual illness at the insured premises" – the Dakota Girls' complaint fails for two reasons. First, it did not plausibly plead that there was an "actual illness" from COVID-19 at the covered facilities. Second, even if it had met that burden, it never plausibly pleaded that statewide shutdown order was "due directly" to anything that happened at its "insured premises." Indeed, there was no allegation that Ohio's Director of Health had ever even heard of Dakota Girls or the other preschools in this case.

*Id*. at 651. Specific to the issue of whether the shutdown order was caused by an outbreak at the insured premises, the Sixth Circuit held that the Ohio shutdown order "was framed in general terms and applied to all [facilities]" and that it "was also couched as a prophylactic measure 'to avoid an imminent threat with a high probability of widespread exposure to COVID-19' not as a response to a specific illness discovered at appellants' preschools or anywhere else." *Id*. at 652.

While the language in the *Dakota Girls* insurance policy is not identical to the Policy at issue here and the Sixth Circuit was applying Ohio law, the reasoning is still persuasive in this case. The language in the insurance policies is very similar. Salon XL's Policy requires that the shutdown order be "due to an outbreak . . . at the insured premises." (ECF No. 1, at PageID 53). The *Dakota Girls*' policy required that the shutdown order had to be "due directly to an outbreak

11

. . . at the insured premises." *Dakota Girls*, 17 F.4th at 651. Given the similarities between Michigan law and Ohio law on construing insurance contracts, there is nothing to suggest that the Sixth Circuit would have reached a different result in *Dakota Girls* had Michigan law applied instead. *See McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439, 802 N.W.2d 619 (2010) ("The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. When the policy language is clear, a court must enforce the specific language of the contract."); *accord Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 41 N.E.3d 1224, 1227 (2015) ("The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect. Words and phrases must be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evinced from the face or overall contents of the instrument.").

Salon XL argues that Little's undiagnosed illness on the evening he closed Roya is sufficient to establish there was an "outbreak" at Salon XL's premises. (ECF No. 40, at PageID 1361). However, the Court need not address whether Little's illness constitutes an outbreak because Salon XL has not provided any authority that Governor Whitmer "had ever even heard of" Salon XL much less that she issued Executive Order 2020-20 because of Little's illness at Salon XL. *See Dakota Girls*, 17 F. 4th at 651.

Therefore, the Court finds that Governor Whitmer did not issue Executive Order 2020-20 due to anything that occurred at Salon XL's premises. Consequently, the Court finds that Salon XL is not entitled to coverage under the Communicable Diseases coverage provision of the Policy.

12

**CONCLUSION**

For the reasons explained above, the Court **GRANTS** West Bend's motion for summary

judgment (ECF No. 36) and **DISMISSES** this action with prejudice.

 IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 12, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 12, 2022, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager
